

# In the Missouri Court of Appeals
## Eastern District
### DIVISION TWO

| | | |
|---|---|---|
| KRISTIN NICOLE STIERS, | ) | No. ED101407 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | 1311-CC01180 |
| | ) | |
| DIRECTOR OF REVENUE, | ) | |
| STATE OF MISSOURI | ) | Honorable Matthew E.P. Thornhill |
| | ) | |
| Appellant. | ) | FILED:  January 27, 2015 |

### OPINION

The Director of Revenue of the State of Missouri (the Director) appeals from the trial court's entry of judgment reinstating the driving privileges of Kristin Nicole Stiers (Driver) after her privileges were revoked by the Director.  We affirm.

### Factual and Procedural Background

In July 2013, Lake St. Louis Police Officer Gerald Crowley (Officer Crowley) arrested Driver for driving while intoxicated and transported her to the police department.  There, Officer Crowley informed Driver of the Missouri Implied Consent Law and of her Miranda[1] rights. Driver then provided a breath sample on an Alco Sensor IV Machine (the breath analyzer), which resulted in a measurement of .172 percent alcohol concentration (BAC).  Officer Crowley subsequently issued Driver a notice of suspension/revocation of her driving privileges.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

Driver timely filed a request for an administrative hearing to contest the suspension/revocation of her driving privileges. Following the hearing, the Director issued its final order revoking Driver's driving privileges. Driver timely filed her petition for trial *de novo* with the trial court.

At the trial *de novo*, the Director offered several exhibits into evidence, including Exhibit A, which contained the result of Driver's breath test, and Exhibit B, a Simulator Calibration Report for the breath analyzer used to measure Driver's BAC. Driver objected to the admission of the breath test result on the ground that the breath analyzer had not been maintained in accordance with the version of 19 CSR 25-30.051(2) that had been in effect at the time of her arrest. Driver argued that the version of 19 CSR 25-30.051(2) in effect at the time of her arrest contained the word "and," which required calibration checks of the breath analyzer using three standard solutions.

The Director maintained that the emergency version of 19 CSR 25-30.051(2) that became effective February 28, 2014, and was in effect at the time of Driver's trial *de novo*, applied retroactively and made the result of the breath test admissible. The latter version of 19 CSR 25-30.051(2) amended the version of the regulation in effect at the time of Driver's arrest in 2013 and changed the word "and" to "or" and required calibration checks of the breath analyzer using one standard solution. The Director argued that the version of 19 CSR 25-30.051(2) in effect at the time of Driver's trial *de novo* was a procedural regulation, not a substantive regulation, and should be applied retroactively because the amended version of the regulation was intended to "clear up any confusion" caused by the use of the word "and." The Director further explained that the reason for the change of the word "and" to "or" was because the version of 19 CSR 25-30.051(2) in effect at the time of Driver's arrest was "being argued by the defense bar" to

exclude the results of breath tests and "was changed so that it wouldn't continue to be a problem."

Following argument, the trial court ruled that it would admit the exhibit containing the result of Driver's breath test but it was not automatically admitting the result of the breath test itself and would take the issue with the case. Driver then testified on her own behalf and was cross-examined by the Director. No other witnesses testified. Both parties later submitted post-trial briefs.

The trial court thereafter entered its findings of fact, conclusions of law, and judgment sustaining Driver's objection to the admission of the result of her breath test because the Director "failed to lay a proper foundation for the admission of the breath test under the regulations in effect at the time of the arrest." The trial court concluded that, considering all the evidence before it, the Director had failed to meet its burden of providing sufficient credible evidence that Driver drove with a BAC at or above .08 percent. Given these findings and conclusions, the trial court also found that it did not need to address the Director's evidence regarding the Simulator Calibration Report for the breath analyzer used to measure Driver's BAC and did not need to address whether the Director had proved that Officer Crowley had probable cause to arrest Driver on reasonable suspicion that she was driving under the influence. The trial court reinstated Driver's driving privileges.

This appeal followed.

### Standard of Review

In an appeal of a court-tried case regarding a driver license revocation, we will affirm the judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. White v. Director of Revenue, 321

3

S.W.3d 298, 307-08 (Mo. banc 2010); O'Rourke v. Director of Revenue, 409 S.W.3d 443, 446 (Mo. App. E.D. 2013). "Declarations of law are reviewed *de novo*." O'Rourke, 409 S.W.3d at 446. We view the evidence and all reasonable inferences therefrom in the light most favorable to the judgment and disregard all evidence and inferences to the contrary. Id.

### Regulation Regarding Use of Three Standard Simulator Solutions

In its first point on appeal, the Director claims the trial court erred in excluding the result of the breath test and reinstating Driver's driving privileges because the breath analyzer used to administer the test had been verified and calibrated according to 19 CSR 25-30.051(2). The Director argues that the version of the regulation in effect at the time of Driver's arrest and when the maintenance report on the breath analyzer was completed did not change the requirement that only a single concentration could be used when performing a calibration check. Essentially, the Director argues that the version of 19 CSR 25-30.051(2) requiring only a single concentration of a simulator solution in effect at the time of the trial *de novo* should have been applied rather than the version of the regulation in effect at the time of Driver's arrest.

In contrast, Driver argues that the result of her breath test was inadmissible at trial because the calibration of the breath test did not comply with the approved techniques and methods prescribed in the versions of 19 CSR 25-30.051(2) and (4) in effect at the time of her arrest.

To establish a *prima facie* case for suspension of a driver's license, the Director must present evidence that, at the time of the arrest, the driver was arrested on probable cause for violating an alcohol-related offense and the alcohol concentration level in the driver's blood, breath, or urine exceeded the legal limit of .08 percent. Section 302.505.1; O'Rourke, 409

4

S.W.3d at 447. The Director bears the burden of establishing grounds for the revocation by a preponderance of the evidence. O'Rourke, 409 S.W.3d at 447.

For purposes of Missouri's Implied Consent law, chemical analysis of a person's breath, blood, saliva, or urine, to be considered valid pursuant to the provisions of Sections 577.019 to 577.041, shall be performed according to methods approved by the state department of health and senior services (DHSS) by licensed medical personnel or by a person possessing a valid permit issued by the state department of health and senior services for this purpose. Section 577.020.3.[2]

"[The] Director may introduce evidence of a breathalyzer test to establish that the driver's BAC exceeded the legal limit." O'Rourke, 409 S.W.3d at 447. "To establish a *prima facie* foundation for admission of breathalyzer test results, [the] Director must demonstrate the test was performed: (1) by following the approved techniques and methods of DHSS; (2) by an operator holding a valid permit; and (3) on equipment and devices approved by DHSS." Id. The calibration and accuracy verification standards of breath analyzers must be followed to satisfy these foundational requirements and are set forth in 19 CSR 25-30.051. Id.

Standards used for the purpose of verifying and calibrating breath analyzers shall consist of standard simulator solutions or compressed ethanol-gas standard mixtures. 19 CSR 25-30.051(1). The standard simulator solutions must be provided by approved suppliers as named in the regulation. 19 CSR 25-30.051(3). Maintenance reports completed prior to the effective date of the rule shall be considered valid under the rule if the maintenance report was completed in compliance with the rules in effect at the time the maintenance was conducted. 19 CSR 25-30.051(8).

---

[2] All statutory references are to RSMo 2000, as amended, unless otherwise indicated.

The version of 19 CSR 25-30.051(2) in effect at the time of Driver's arrest in July 2013 and when the maintenance report on the breathalyzer was completed stated, in pertinent part:

> (2) Standard simulator solutions, used to verify and calibrate evidential breath analyzers shall be solutions from approved suppliers. The standard simulator solutions used shall have a vapor concentration within five percent (5%) of the following values:
> (A) 0.10%;
> (B) 0.08%; *and* (emphasis added)
> (C) 0.04%.

The version of 19 CSR 25-30.051(2) in effect at the time of Driver's trial *de novo* in April 2014, stated, in pertinent part:

> (2) Standard simulator solutions, used to verify and calibrate evidential breath analyzers shall be solutions from approved suppliers. The standard simulator solutions used shall have a vapor concentration within five percent (5%) of the following values:
> (A) 0.10%;
> (B) 0.08%; *or* (emphasis added)
> (C) 0.04%.

The difference between the two versions of 19 CSR 25-30.051(2) is a single word: "and" versus "or." "The same principles of construction are used in interpreting regulations as in interpreting statutes." Teague v. Missouri Gaming Com'n, 127 S.W.3d 679, 686 (Mo. App. W.D. 2003). In the absence of a definition in the regulation, the words will be given their plain and ordinary meaning as derived from a dictionary." Teague, 127 S.W.3d at 686. "The plain and ordinary sense of a word is generally found in the dictionary." EBG Health Care III, Inc., v. Missouri Health Facilities Review Committee, 12 S.W.3d 354, 358 (Mo. App. W.D. 2000). The word "and" is a conjunction used to join words or groups of words and means "added to" or "plus." Merriam-Webster Online Dictionary, *at* www.merriam-webster.com/and (last visited January 12, 2015). The word "or" also is a conjunction; however, "or" is used to indicate an alternative, the equivalent or substitutive character of two words or phrases, or approximation or

6

uncertainty. Merriam-Webster Online, *at* www.merriam-webster.com/or (last visited January 12, 2015).

Here, the trial court properly excluded the results of Driver's breath test because three standard simulator solutions were not used for conducting a maintenance check of the breath analyzer, as required by the version of 19 CSR 25-30.051(2) in effect at the time of Driver's arrest. Driver provided a breath sample in July 2013 on a breath analyzer that had been maintained in June 2013 using only a 0.100 percent standard simulator solution rather than all three standards required by the regulation. From December 30, 2012, when the version of 19 CSR 25-30.051(2) in effect at the time of Driver's arrest was enacted, until February 28, 2014, when 19 CSR 25-30.051(2) was amended, the regulation did not allow a choice between alternative standard simulator solutions. A plain reading of the version of 19 CSR 25-30.051(2) in effect at the time of Driver's arrest included the word "and" to unambiguously indicate that all three standards should be used to calibrate the breath analyzer. Because the language of 19 CSR 25-30.051(2) was unambiguous, we will not look past the plain and ordinary meaning of the regulation. See EBG Health Care III, Inc., 12 S.W.3d at 358. Given the plain language of the regulation, it was the Director's burden to show that the calibration and accuracy verification standards set forth in 19 CSR 25-30.051(2) in effect at the time of Driver's arrest were followed. We find it difficult to understand how the two versions of the regulation are not in conflict or, as the Director urges this Court, how they can be viewed to require the same thing. To view the two versions of this regulation as the Director argues and conclude that "and" and "or" have the same meaning would require us to ignore the plain difference between the words.[3]

---

[3] On appeal, the Director's brief also included an argument referencing Form 7 to encourage this Court to reach the opposite conclusion. Form 7 is a report form required for the recording of calibration checks performed on the breath analyzer. See 19 CSR 25-30.031(7)(F). However,

Consequently, because only one standard was used, in violation of the version of 19 CSR 25-30.051(2) in force at the time the maintenance report and the breath test administered to Driver were performed, the result of the breath test was inadmissible. The trial court did not err in excluding the results of Driver's breath test. Point denied.

<u>Application of Regulation Governing Verification and Calibration of Breath Test Devices</u>

In its second point on appeal, the Director claims the trial court erred in excluding the results of the breath test and reinstating Driver's driving privileges because the court applied the wrong version of 19 CSR 25-30.051(2) governing the verification and calibration of breath test devices in that the regulation is procedural; thus, the version of the regulation in effect at the time of Driver's trial *de novo* should have applied retroactively.

A retroactive law is a legislative act that looks backward or contemplates the past, affecting acts or facts that existed before the act came into effect. Black's Law Dictionary (9th ed. 2009). The terms "retroactive law" and "retrospective law" are used synonymously. <u>See</u> Black's Law Dictionary (9th ed. 2009). "Generally, statutes and administrative rules operate prospectively because the Missouri Constitution forbids enactment of a retrospective law impairing a vested right." <u>DeClue v. Director of Revenue</u>, 945 S.W.2d 684, 686 (Mo. App. 1997). "Substantive laws define the rights and duties giving rise to the cause of action by impairing vested rights acquired under existing law, creating new obligations, or imposing new duties." <u>DeClue</u>, 945 S.W.2d at 686. "In contrast, procedural regulations establish the method of enforcing rights and carrying on the suit." <u>Id</u>. "[P]rocedural statutes and administrative rules apply retrospectively *unless the enactment reveals a contrary intent*." <u>Id</u>. (emphasis added).

---

because we find the language of 19 CSR 25-30.051(2) so plain, we are not addressing Form 7 as suggested by the Director. Furthermore, it is our view that the language of 19 CSR 25-30.051(2), on its face, overrides the use of Form 7 to resolve the issues presented in this case.

In this case, the trial court correctly applied the version of 19 CSR 25-30.051(2) that was in effect at the time of Driver's arrest because the amended version of 19 CSR 25-30.051 that was in effect at the time of her trial *de novo* contained the following language:

> (8) Maintenance reports completed prior to the effective date of this rule shall be considered valid under this rule *if the maintenance report was completed in compliance with the rules in effect at the time the maintenance was conducted.*

(Emphasis added.)

Therefore, even if the trial court had applied the version of 19 CSR 25-30.051(2) that became effective February 28, 2014, retroactively to Driver's case, the result of the breath test still would have been excluded since the language of 19 CSR 25-30.051(8) indicates "a contrary intent." DeClue, 945 S.W.2 at 686. Here, the maintenance report at issue was completed prior to the effective date of the regulation but was not completed in compliance with the regulation in effect at the time the maintenance was conducted, which required utilizing all three standard simulator solutions.

Consequently, the trial court did not err in excluding the results of the breath test and reinstating Driver's driving privileges because the court applied the correct version of 19 CSR 25-30.051(2). Point denied.

Conclusion

The trial court's judgment is affirmed.

_____
Mary K. Hoff, Judge

Sherri B. Sullivan, Presiding Judge and Philip M. Hess, Judge, concur.